712 August 3, 2017 No. 40

IN THE SUPREME COURT OF THE
STATE OF OREGON

In re Complaint as to the Conduct of

JAMES R. KIRCHOFF
OSB No. 081879,
*Accused.*

(OSB No. 1505, SC S064308)

En Banc

On review of the decision of a trial panel of the Disciplinary Board, dated June 14, 2016.

Argued and submitted May 11, 2017.

C. Robert Steringer, Harrang Long Gary Rudnick PC, Portland, argued the cause and filed the briefs for the Accused.

Susan R. Cournoyer, Assistant Disciplinary Counsel, Tigard, argued the cause and filed the brief for the Oregon State Bar.

Before Balmer, Chief Justice, and Kistler, Walters, Nakamoto, Flynn and Duncan, Justices, and Linder, Senior Justice *pro tempore*.*

PER CURIAM

The accused is suspended from the practice of law for a period of two years, commencing 60 days from the filing of this decision.

_____
  * Landau, J., did not participate in the consideration or decision of this case. Brewer, J., retired June 30, 2017, and did not participate in the decision of this case.

**PER CURIAM**

In this lawyer disciplinary proceeding, the Oregon State Bar charged James R. Kirchoff (the accused) with multiple violations of the Oregon Rules of Professional Conduct (RPC), based on his submission of false evidence to a tribunal. A trial panel of the Disciplinary Board conducted a hearing, found that the accused had violated those rules, and determined that the appropriate sanction was suspension from the practice of law for a period of two years. The accused seeks review of the trial panel's finding that he committed the alleged violations. We review the trial panel's decision *de novo*. ORS 9.536(2); Bar Rule of Procedure (BR) 10.6. The Bar has the burden of establishing misconduct by clear and convincing evidence. BR 5.2. Clear and convincing evidence is evidence establishing that "the truth of the facts asserted is highly probable." *In re Ellis / Rosenbaum*, 356 Or 691, 693, 344 P3d 425 (2015). For the reasons that follow, we agree with the trial panel that the Bar presented evidence establishing the alleged violations under that standard. The accused does not challenge the sanction imposed by the trial panel; accordingly, we suspend the accused from the practice of law for a period of two years.

## FACTS

Before March 1, 2014, the accused was a lawyer with the Grants Pass law firm then known as Sorenson, Ransom, Ferguson & Kirchoff, LLP. The charges arise out of the accused's representation of husband in a marital dissolution action initiated by his wife. Wife's lawyer, Claar, had filed a petition for dissolution on January 10, 2014. On January 13, husband retained the accused to represent him in the dissolution proceeding, and husband signed a retainer agreement on February 7. The accused did not file an appearance in the proceeding, nor did he provide written notice to Claar about his intent to file an appearance.

On February 11, Claar filed an Ex Parte Motion for Order of Default and Entry of Judgment by Default on wife's behalf on the ground that husband had made no appearance in the case before the February 10 deadline. The court

granted the motion on February 13 and signed a general judgment of Dissolution of Marriage on February 27.

The accused made his first appearance in the matter as attorney of record when he filed a Motion to Vacate Default Judgment on husband's behalf on March 7. The accused based his motion on ORCP 69 B(2), which requires a party to file and serve notice of the intent to apply for an order of default at least 10 days before applying for the order, if the opposing party or the party's counsel has previously provided written notice of intent to appear. The accused attached to that motion a declaration in which he stated, "I provided to counsel for Petitioner written notice of intent to appear in [this] action on January 29, 2014." The accused, however, did not attach as an exhibit to the declaration any written notice of intent to appear.

On March 12, Claar filed an objection to the motion. In his supporting affidavit, Claar stated that he first became aware that the accused was representing husband on March 7, the day that the accused filed the motion to vacate the default judgment, and that, although the accused had informed him that his claimed written notice was by email, neither Claar nor his staff had been able to locate any such email in their in-boxes, deleted messages, or spam folders. Claar further informed the court that both he and his legal assistant had made several requests to the accused to send them a copy of the January 29 email but that the accused had failed to do so.

On March 13, the accused filed a reply to Claar's objection, supported by a declaration similar to the one that he had filed on March 7. That March 13 declaration, however, attached a four-page document purporting to include an email that the accused had sent to Claar on Thursday, January 29, 2014, as evidence of his written notice to Claar. In that email, the accused mentioned wife's *ex parte* motion to exclude husband from the family home and the possibility that husband would one day file a similar motion. The court held a hearing in chambers on the accused's motion to vacate. The judge denied the motion to vacate on the ground that the purported January 29 email did not provide sufficient notice of intent to appear.

The accused then filed a Motion for Relief from Judgment under ORCP 71 B(1), requesting relief from the default judgment in the dissolution case on the grounds of mistake, inadvertence, surprise, or excusable neglect. That motion recited that it was based on the accused's March 13 declaration, which, as noted, recited that the accused had notified Claar of his intent to appear in the purported, attached, January 29 email.

The court held another hearing on the ORCP 71 motion. At that hearing, Claar argued in opposition that he had the following reasons to believe that the purported January 29 email had been fabricated: (1) Despite numerous requests, the accused never produced the purported email to Claar electronically; (2) the email stream that concludes with the purported email was about another case involving Claar, and Claar found on his own computer all emails in the thread except that last, disputed email; and (3) the earlier emails in the thread included the signature block of Sorenson, Ransom, Ferguson & Kirchoff, LLP (where, as noted, the accused worked until March 1), whereas the signature block on the purported January 29 email was for James Holmbeck Kirchoff LLC, the law firm that the accused joined on March 1, which did not yet exist on January 29, 2014.

The accused responded by asserting that Claar had had actual knowledge that the accused was representing husband and, in fact, had had several phone conversations with him in January about the case. When the judge pressed the accused on the use of a signature block for a firm at which he was not then working, the accused asserted various problems arising out of the transition from one firm to the other and one email system to another. Claar, for his part, flatly denied that he had talked to the accused about the case before March 7.

The court granted the accused's motion to vacate. The court declined to make a finding that the email was fraudulent and asked the accused to find the email in electronic form and forward it to Claar. The accused never did so. The parties subsequently settled the dissolution matter.

Claar later reported the accused to the Bar. After receiving the accused's response, the Bar referred the matter to Disciplinary Counsel. In response to Disciplinary Counsel's request for information, the accused stated that the purported January 29 email was merely a draft that he had created to experiment with his signature block in anticipation of changing law firms, and that he must have printed it to show his secretary, who eventually mistook it for a real email and filed it in husband's file. He also informed Disciplinary Counsel that he had inadvertently deleted the draft without sending it to Claar.

A Bar technology expert, Johnson, examined the purported email and concluded that it had not been sent. As Johnson later testified before the trial panel, the fact that the email had not been sent was evident from its formatting.[1] Additionally, Johnson noticed that January 29 was not a Thursday as stated in the "sent" field of the purported email, but instead it was a Wednesday. Based on that inconsistency, Johnson testified that he believed that the email had been "manipulated" because, essentially, the accused's computer could not have made that error. As he stated, "I was at a loss to determine any method by which I could mis-configure the computer to produce a result like that, leaving me with the likelihood that the text had actually been typed by a person rather than generated by the application itself." He did not believe that those two "anomalies" (the formatting and the day/date errors) could have been the result of the explanation that the accused had provided to the Bar initially—that they were the result of having multiple email applications open on his desktop at once.

Additionally, as Johnson later testified, he also did not believe that the purported January 29 email was an unsent draft that had been saved and/or printed, as the accused claimed in his response to the Bar's inquiry. That was so because there was a "sent" field, and a date appeared in the "sent" field. According to Johnson, if, as the accused

---

[1] Specifically, in various respects, the From/Sent/To/Subject header on the January 29 email was not formatted in the way it would be on a sent email in Outlook, the email program that the accused was using. Rather, that part of the email was formatted like an email that would appear earlier in an email thread (like one being replied to or forwarded).

had represented to the Bar and later testified before the trial panel, the document was actually a draft that had never been sent, the printed document would not have displayed a four-line From/Sent/To/Subject header. Instead, it would have displayed a header with only two lines: To and Subject. Moreover, that two-line header would have been formatted like a sent email and not like an email that appears earlier in an email thread. And most importantly, there would not have been a "sent" field with a date at all, because, as the accused admitted, the purported January 29 email had not been sent.

Based on its investigation, including Johnson's analysis, the Bar charged the accused with violating RPC 3.3(a)(1) (making a false statement of fact or law to a tribunal or failing to correct a false statement of material fact or law previously made to the tribunal by the lawyer); RPC 3.4(b) (falsifying evidence); RPC 8.4(a)(3) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation that reflects adversely on the lawyer's fitness to practice law); and RPC 8.1(a)(1) (knowingly making a false statement of material fact in connection with a disciplinary matter).

At a subsequent hearing before the trial panel, the Bar called Johnson to testify about the anomalies in the purported January 29 email, and it called Claar, who testified, among other things, that he had had no conversation with the accused about the dissolution matter and that he did not know that the accused had been retained by husband until after he had filed for a default judgment in that action. Claar testified that he had not been notified in any way—by in-person conversation, email, fax, or phone call—that the accused was representing husband until the accused emailed him early in the morning on March 7 (the day that the accused filed the motion to vacate the default judgment) and asked him to agree to the vacation.

The accused testified on his own behalf at the hearing before the trial panel. As for the purported January 29 email, to explain how it, and, specifically, the erroneous signature block, came to exist, the accused testified that the

"only thing I could imagine is that I typed [the signature block] in, there were different iterations of it that came about over time. And I typed this into a draft, an opened draft in Outlook. And not draft in the sense that it's in the draft folder, just a—just a document that's opened.

"So if I—you click 'open an e-mail,' or you click on 'new e-mail,' I would call that a draft; not the actual draft folder. But it opened up, and I type in. And this is how I would design the signature block. I would actually put it into that, over the top of the old one. That's the only, the only thing I could think of. There's no other reason why it would be in there."

Among other witnesses, the accused also called his own technology expert, Englen, to testify on his behalf. Englen testified, as Johnson (the Bar's technology expert) had, that the purported January 29 email had not been sent—for all of the same formatting-related reasons that Johnson had identified. Additionally, Englen testified that the formatting of the purported January 29 email was likely created by altering a previously sent email. That is, he testified that the purported January 29 email was "a draft that used a previous email as a format."

Regarding what he called the "glitches" in the purported email, Englen testified that Outlook is error-prone and has had problems with date/day of the week discrepancies in sent emails, which he had observed in sent emails several times in his career over the past 15 years. Englen was not asked whether a "draft" email would have a "sent" field, why a "draft" email would show a date in the "sent" field, or how day/date discrepancies in sent emails could occur in a "draft" email that never was sent or even saved to a draft folder. Notably, Englen testified that a document like the purported January 29 email would be easy to fabricate and that he had no personal knowledge whether the purported January 29 email was actually a draft or a fabricated document. When a trial panel member asked Englen whether, in his opinion, the purported January 29 email could have been fabricated intentionally, Englen responded, "Completely, yeah, absolutely. *** No doubt, this could be completely totally made up."

The trial panel found that the accused, to convince the court to set aside the default judgment, knowingly falsified the purported January 29 email and knowingly made misrepresentations to the court regarding the purported email. As an initial matter, the trial panel found, based on the testimony of both the Bar's and the accused's experts, that the purported January 29 email had not been sent. For that reason, the trial panel found that the accused falsely represented to the trial court that he had given written notice of his intent to appear in the dissolution matter.

Next, for three reasons, the trial panel found that the accused knowingly falsified the purported January 29 email and that the accused's testimony that the email was a draft that was printed and inadvertently filed was not credible. First, as the Bar's expert testified, a draft email would not have been formatted as it appeared in the purported January 29 email, it would not have had a date in a "sent" line, and, in fact, it would not have had a "sent" line at all. Second, the trial panel found that the fact that the purported January 29 email listed the date as "Thursday, January 29, 2014," when that date actually was a Wednesday supported the conclusion that the purported January 29 email was fabricated. The trial panel noted that the accused's expert, Englen, testified that anomalies like that can occur at the server level in a sent email, but he also testified that the purported January 29 email had not been sent. That testimony led the trial panel to conclude that date in the "sent" field had been manipulated by the accused, and, in his haste, he erroneously entered the incorrect day of the week. Third, the trial panel noted that the purported January 29 email used the incorrect signature block. The trial panel deemed it unlikely that all of the "anomalies" in the purported email would have occurred without human intervention.

In addition to that factual evidence, the trial panel found two other items of circumstantial evidence pointing to the conclusion that the accused falsified the purported January 29 email. First, the accused did not attach the purported January 29 email to his motion to set aside the judgment. And second, although the accused testified that, in phone calls that the accused claimed took place in January

2014, he and Claar essentially settled the case and that he had had no further conversation with Claar about the case until March 7, the accused conceded that the purported January 29 email was not about settlement. For those reasons, the trial panel found that the accused's testimony regarding his communication with Claar was not credible.

Ultimately, the trial panel concluded that there was clear and convincing evidence that the accused falsified the purported January 29, 2014, email and that the accused printed that document and submitted it to the court, to counsel, to the Bar, and to the trial panel, when he knew or should have known that that document did not exist, digitally, on paper, or in any form on the date that he testified that he sent it.

On review, the accused argues that an examination of the entire record reveals that the Bar did not prove by clear and convincing evidence that he committed the alleged violations. That is, he argues, under the "clear and convincing evidence" standard, the Bar was required to, but did not, prove that it is "highly probably" that he fabricated the purported January 29 email. Rather, he argues, it is far more probable that that document was just what the accused now says it was: the hard copy of a draft email that the accused wrote but never sent, which was mistakenly placed in husband's client file.

Having reviewed *de novo* all the evidence in this case, which we have summarized above, we agree with the trial panel and conclude that there is clear and convincing evidence that the accused violated RPC 3.3(a)(1) (making a false statement of fact or law to a tribunal or failing to correct a false statement of material fact or law previously made to the tribunal by the lawyer); RPC 3.4(b) (falsifying evidence); RPC 8.4(a)(3) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation that reflects adversely on the lawyer's fitness to practice law); and RPC 8.1(a)(1) (knowingly making a false statement of material fact in connection with a disciplinary matter). Further recitation of the factual bases for our independent conclusion would not benefit the bench, the Bar, or the public. Because, as noted, neither party has challenged the appropriateness

of the sanction, we also conclude that a two-year suspension is appropriate.

The accused is suspended from the practice of law for a period of two years, commencing 60 days from the filing of this decision.